IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CR-15-212-R |
| ) | |
| TEVIN JAMAL ANDERSON, ) | |
| ) | |
| Defendant. ) | |

**SENTENCING MEMORANDUM**

Tevin Jamal Anderson, through counsel, William P. Earley, submits this Sentencing Memorandum addressing the statutory factors set forth in 18 U.S.C. §3553(a). The primary directive in Section 3553(a) is for sentencing courts to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph 2." 18 U.S.C. §3553(a)(2) states that such purposes are:

(A)　to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B)　to afford adequate deterrence to criminal conduct;

(C)　to protect the public from further crimes of the defendant; and

(D)　to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

In determining the minimally sufficient sentence, §3553(a) further directs sentencing courts to consider the following factors:

1)　"the nature and circumstances of the offense and the history and characteristics of the defendant" (18 U.S.C. §3553(a)(1));

2) "the kinds of sentences available" (18 U.S.C. §3553(a)(3));

3) "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct" (18 U.S.C. §3553(a)(6)); and

4) "the need to provide restitution to any victims of the offense." (18 U.S.C. §3553(a)(7)).

Section 3582(a) of Title 18, United States Code, provides that imposition of a term of imprisonment is subject to the following limitation: in determining whether and to what extent imprisonment is appropriate based on the §3553(a) factors, the judge is required to "recogniz[e] that imprisonment is *not* an appropriate means of promoting correction and rehabilitation" (emphasis added). Pursuant 18 U.S.C. §3661, "no limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." (emphasis added).

**NATURE AND CIRCUMSTANCES OF THE OFFENSE AND THE HISTORY AND CHARACTERISTICS OF THE DEFENDANT.**

*Information related to the history and characteristics of the defendant.*

Mr. Anderson experienced a chaotic childhood. During his childhood and formative years neither of his parents were involved in his life. *PSR ¶61*. Mr. Anderson's aunt provided a nurturing environment. However, in spite of her best efforts it was not enough to keep Mr. Anderson from being influenced negatively by others. Mr. Anderson grew up in an area where gang activity was prevalent. By default these were the only individuals with

whom he had frequent contact as a preteen and teen. Based on these circumstances Mr. Anderson inevitably became a part of the gang.

Mr. Anderson's juvenile history is comprised of only one serious criminal act. *PSR ¶33*. This is in spite of the negative associations he had as a juvenile. Importantly, the violence committed during that crime were the actions of a codefendant, not Mr. Anderson. As an adult Mr. Anderson has not engaged in any criminal activity that approaches the severity of that conduct. In fact, Mr. Anderson's adult criminal convictions are comprised of municipal court violations or misdemeanor acts. See *PSR ¶¶34 - 47*.

In addition to the negative peer influences that impacted Mr. Anderson, another negative consequence of his chaotic childhood was his failure to complete school. Mr. Anderson finished the ninth grade. He was incarcerated at age 16 and did not attempt to return to high school after his release. Mr. Anderson attempted to obtain a GED but at this time still lacks a high school degree. As a result, Mr. Anderson has had difficulty securing employment that affords him the ability to support himself and his child.

*Information related to the offense conduct*

Mr. Anderson admitted to selling a firearm without a license. In his letter to the Court, *Attachment 1*, Mr. Anderson explains that an inability to support his family was the primary motive behind the offense. Mr. Anderson has been dealt a painful reminder that engaging in criminal activity as a means of trying to support his family inevitably causes more prolonged pain.

**THE NEED FOR THE SENTENCE IMPOSED.**

Mr. Anderson does not challenge the fact the offense of conviction is serious. Congress chose a statutory range of 0 to 5 years' imprisonment to ensure the sentencing court has the opportunity to consider all aggravating and mitigating factors when deciding a fair and just sentence. In this case, a sentence of imprisonment at the low end of the statutory range is sufficient to reflect the seriousness of the offense. Counsel recommends a sentence of time served.

Mr. Anderson understands the wrongfulness of his actions and respects the fact the law requires a consequence to those actions. The nearly eight months Mr. Anderson has served in jail awaiting disposition of this case has served its purpose. Mr. Anderson realizes his actions have had a swift and severe consequence to those closest to him. Sitting in jail with no ability to assist and comfort loved ones on the outside is one of the most significant consequences of incarceration. As evidenced by his letter, Mr. Anderson has no intention of putting his loved ones in this position again.

Deterrence and protection of the public will result from supervision, not incarceration. Mr. Anderson's time in jail has given him an opportunity to plan for the future. He intends to obtain full time employment, further his education, learn a job skill, and most importantly be a father to his child. Mr. Anderson knows all to well what it is like to grow up without a father. Avoiding the infliction of that emotional turmoil on his child is a priority. Under these circumstances a sentence of time served is warranted.

**THE KINDS OF SENTENCE AND THE SENTENCING RANGE ESTABLISHED FOR THE APPLICABLE CATEGORY OF OFFENSE COMMITTED BY THE APPLICABLE CATEGORY OF DEFENDANT AS SET FORTH IN THE GUIDELINES**.

The Presentence Report provides an advisory guideline range of imprisonment from 37 to 46 months. *PSR ¶87*. Mr. Anderson objected to the calculation of the advisory guidelines resulting in this range of punishment. *PSR Addendum*. The objections concern application of the two level increase based on the number of weapons involved in the offense and the two level increase based on obstruction of justice during the investigation of the offense. *PSR Addendum*.[1]

As it concerns calculating the number of firearms for purposes of an increase in the offense level the Sentencing Commission advises the Court to

> count only those firearms that were unlawfully sought to be obtained, unlawfully possessed, or unlawfully distributed, including any firearm that a defendant obtained or attempted to obtain by making a false statement to a licensed dealer.

*USSG §2K2.1, comment., n. 5.* There is no evidence Mr. Anderson unlawfully sought to obtain an AR-15, unlawfully possessed an AR-15, or unlawfully distributed an AR-15. At most the recorded telephone call referenced in the Presentence Report suggests someone else was trying to sell an AR-15.

---

[1] The facts on which the number of weapons adjustment is based are recounted in paragraph 9 of the Presentence Report. The objection erroneously references paragraph 5.

Removing the adjustment for the numbers of firearms and obstruction of justice would result in a total offense level of 13. Combined with a criminal history category of IV the advisory sentencing guideline range is 24 to 30 months.

### PERTINENT POLICY STATEMENTS ISSUED BY THE SENTENCING COMMISSION

Mr. Anderson's criminal history category has been affected by four prior convictions: the Youthful Offender adjudication for robbery in 2009 (*PSR ¶33*), a petty theft conviction in 2011 (*PSR ¶34*), municipal marijuana and driving under suspension convictions in 2013 (*PSR ¶38*), and a municipal domestic abuse conviction in 2014 (*PSR ¶44*). Mr. Anderson's criminal history category is a category IV as a result of these convictions and the fact he was under a suspended sentence for a misdemeanor. (*PSR ¶49*) Thus, of the eight criminal history points counted in Mr. Anderson's case, six of those points are derived from misdemeanor cases. In all of these cases attorney representation is either noted as waived or unknown.

The advisory sentencing guidelines overstate the seriousness of the offense based on a criminal history category of IV. In *Argersinger v. Hamlin*, 407 U.S. 25, 37 (1972), the Supreme Court held "absent a knowing and intelligent waiver, no person may be imprisoned for any offense, whether classified as petty, misdemeanor, or felony, unless he was represented by counsel at his trial." In its decision, the Court in *Argersinger* made the following observations:

Beyond the problem of trials and appeals is that of the guilty plea, a problem which looms large in misdemeanor as well as in felony cases. Counsel is needed so that the accused may know precisely what he is doing, so that he is fully aware of the prospect of going to jail or prison, and so that he is treated fairly by the prosecution.

In addition, the volume of misdemeanor cases, far greater in number than felony prosecutions, may create an obsession for speedy dispositions, regardless of the fairness of the result. The Report by the President's Commission on Law Enforcement and Administration of Justice, The Challenge of Crime in a Free Society 128 (1967), states:

> For example, until legislation last year increased the number of judges, the District of Columbia Court of General Sessions had four judges to process the preliminary stages of more than 1,500 felony cases, 7,500 serious misdemeanor cases, and 38,000 petty offenses and an equal number of traffic offenses per year. An inevitable consequence of volume that large is the almost total preoccupation in such a court with the movement of cases. The calendar is long, speed often is substituted for care, and casually arranged out-of-court compromise too often is substituted for adjudication. Inadequate attention tends to be given to the individual defendant, whether in protecting his rights, sifting the facts at trial, deciding the social risk he presents, or determining how to deal with him after conviction. The frequent result is futility and failure. As Dean Edward Barrett recently observed:
>
> "Wherever the visitor looks at the system, he finds great numbers of defendants being processed by harassed and overworked officials. Police have more cases than they can investigate. Prosecutors walk into courtrooms to try simple cases as they take their initial looks at the files. Defense lawyers appear having had no more than time for hasty conversations with their clients. Judges face long calendars with the certain knowledge that their calendars tomorrow and the next day will be, if anything longer, and so there is no choice but to dispose of the cases.
>
> Suddenly it becomes clear that for most defendants in the criminal process, there is scant regard for them as individuals.

> They are numbers on dockets, faceless ones to be processed and sent on their way. The gap between the theory and the reality is enormous.
>
> Very little such observation of the administration of criminal justice in operation is required to reach the conclusion that it suffers from basic ills."
>
> That picture is seen in almost every report. "The misdemeanor trial is characterized by insufficient and frequently irresponsible preparation on the part of the defense, the prosecution, and the court. Everything is rush, rush." Hellerstein, The Importance of the Misdemeanor Case on Trial and Appeal, 28 The Legal Aid Brief Case 151, 152 (1970).
>
> There is evidence of the prejudice which results to misdemeanor defendants from this "assembly-line justice." One study concluded that "(m)isdemeanants represented by attorneys are five times as likely to emerge from police court with all charges dismissed as are defendants who face similar charges without counsel." American Civil Liberties Union, Legal Counsel for Misdemeanants, Preliminary Report 1 (1970).

*Argersinger*, 407 U.S. at 34 - 36.

One should question whether a young adult with a ninth grade education should be penalized in the instant case based on prior convictions obtained without the assistance of counsel. The Sentencing Commission continues to recognize that "[w]hen a court finds an atypical case, one to which a particular guideline linguistically applies but where conduct significantly differs from the norm, the court may consider whether a departure is warranted." USSG §1A1.1, Editorial Note (previously Part A of Chapter One). Mr. Anderson submits the misdemeanor convictions resulting in a criminal history category of IV overstates the severity of his criminal history. Removing these points results in a total of two criminal history points and a reduction of Mr. Anderson's criminal history category to II.

The probation office suggests the Court may consider a variance to a more severe sentence because of perceived technicalities that prevent the use of a higher base offense level (*PSR ¶109*) and insufficient information to apply the "large capacity magazine" adjustment (*PSR ¶110*). The technicalities mentioned by the Presentence Report writer are not technicalities that somehow worked to Mr. Anderson's advantage, but a function of the guidelines. In a case in which it was argued that a defendant missed out on being considered a "career offender" because of perceived technicalities, the Tenth Circuit ruled:

> One is either a career offender or one is not. No allowance is made for "close cases." The Commission has carefully circumscribed the types of crimes for which conviction will result in a status that will qualify a defendant for enhanced sentencing. It is not a province of district judges to elasticize the constraints within which that definition exists.

*United States v. Hawkins*, 901 F.2d 863, 867 (10th Cir. 1990). The Tenth Circuit's admonition applies with equal force to the application or non-application of specific offense characteristics. A specific offense characteristic either applies or it does not. Any attempt to analogize to potential enhancements that are simply not applicable in an effort to vary upward from the advisory guideline range is error.

As is concerns the paucity of information that prevents application of the large capacity magazine adjustment, this alleged bases for departure is similarly flawed. Pursuant to USSG §2K2.1, comment., n. 2, the enhanced base offense level in a case involving a large capacity magazine adjustment only applies when:

> . . . at the time of the offense (A) the firearm *had attached to it* a magazine or similar device that could accept more than 15 rounds of ammunition; or (B) a

magazine or similar device that could accept more than 15 rounds of ammunition *was in close proximity to the firearm*. (emphasis added)

"Application Note 2 clarifies that § 2K2.1(a)(3)(A)(i) [and (4)] required proof of "physical proximity between the high-capacity magazine and the firearm" that police found in [the defendant's] unlawful possession." *United States v. Davis*, 668 F.3d 576, 579 (8th Cir. 2012). Close proximity requires at a minimum the firearm and magazine be physically near one another. See, *e.g., United States v. Mudlock*, 483 Fed.Appx. 823, 825 (4th Cir. 2012) (unpublished) ("officers found the magazine in a dresser that was two or three steps from the open gun safe where they located the three guns, one of which was capable of accepting the magazine").

As the Presentence Report clearly provides, neither the AR-15 or Glock pistol were seized. No large capacity magazine was seized. The discovery material does not mention the existence of a large capacity magazine as part of this case. It goes without saying no firearm attributed to this case had a large capacity magazine attached to it. Further, no large capacity magazine was in close proximity to a firearm allegedly involved in this case. Fashioning a basis to vary upward based on an analogy to the large capacity magazine enhancement is also error.

### THE NEED TO AVOID UNWARRANTED SENTENCE DISPARITIES AMONG DEFENDANTS WITH SIMILAR RECORDS WHO HAVE BEEN FOUND GUILTY OF SIMILAR CONDUCT.

Each case provides its own set of mitigating and aggravating factors that to some extent distinguish it from the "heartland" of cases of its type. Counsel is not aware of any

disparity that would arise among similarly situated offenders if this Court gives Mr. Anderson a sentence outside the advisory sentencing guidelines scheme. As noted by the Supreme Court in *Gall*, the court must also consider the need to "avoid unwarranted *similarities* among other [offenders] who [are] not similarly situated." *Id.* at 55.

### NEED TO PROVIDE RESTITUTION.

Restitution is not an issue.

### CONCLUSION

Mr. Anderson accepts responsibility for his actions. Mr. Anderson requests the Court impose a sentence of time served to facilitate the transition to supervision.

Respectfully submitted,

*s/ William P. Earley*
WILLIAM P. EARLEY
ASSISTANT FEDERAL PUBLIC DEFENDER
Bar Number 11293
SUITE 109, 215 DEAN A. McGEE AVENUE
OKLAHOMA CITY, OKLAHOMA  73102
(405)609-5930   FAX (405) 609-5932

### CERTIFICATE OF SERVICE

I hereby certify that on this the 15th day of April, 2016, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic filing to the following ECF registrants: Kerry Blackburn, Assistant United States Attorney.

*s/ William P. Earley*
WILLIAM P. EARLEY